Opinion issued May 3, 2007

 










In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00667-CV






RUTH McLEAN BOWERS, MARRS McLEAN BOWMAN, BONNIE
BOWMAN KORBELL, RUTH BOWMAN RUSSELL, BETH BOWMAN
HARPER, MARGARET BOWMAN McMAHON, and BARBARA
BOWMAN, Appellants


V.


BETTY SPEER TAYLOR, ROBERT C. BARKER, JR., CHARLES H.
BARKER, DAVID T. SPEER, T. C. CRAIGHEAD & CO., and BANK OF
AMERICA, N.A., AS TRUSTEE FOR THE KATHERINE C. HOLT
TRUSTS f/b/o ROBERT C. BARKER, JR., CHARLES H. BARKER, BETTY
SPEER TAYLOR, DAVID T. SPEER, MELANIE S. WIGGINS, and
MARGARET S. CARTER, Appellees






On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 03CV1649






O P I N I O N

 Appellants, Ruth McLean Bowers, Marrs McLean Bowman, Bonnie Bowman
Korbell, Ruth Bowman Russell, Beth Bowman Harper, Margaret Bowman McMahon,
and Barbara Bowman (collectively Bowers), appeal from the trial court's declaratory
judgment that they do not own a one-third interest in a mineral estate that is also
claimed by appellees, Betty Speer Taylor, Robert C. Barker, Jr., Charles H. Barker,
David T. Speer, T.C. Craighead & Co., and Bank of America, N.A., as trustee for the
Katherine C. Holt Trusts f/b/o Robert C. Barker, Jr., Charles H. Barker, Betty Speer
Taylor, David T. Speer, Melanie S. Wiggins, and Margaret S. Carter (collectively
Taylor). Bowers also appeals the trial court's award in favor of Taylor for $53,699.50
in attorney's fees under the Declaratory Judgments Act. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (Vernon 1997). The trial court granted summary judgment for
Taylor, declaring that, under a deed for a mineral estate between the predecessor in
interest for Taylor and the predecessor in interest for Bowers, Bowers did not receive
a fee simple interest in the mineral estate. (1) 

 In three issues, Bowers contends (1) that the deed provision granting one-third
of the mineral estate in fee to Bowers's predecessor in interest did not violate the rule
against perpetuities; (2) that the word "forfeit" as used in the deed and a related
mineral lease included termination of the lease for lack of production; and (3) that the
trial court erred in awarding attorney's fees because Taylor's lawsuit was not properly
brought under the Declaratory Judgment Act and because the award was not equitable
and just. We conclude the trial court erred by rendering a declaratory judgment that
Bowers did not receive a fee simple interest in the mineral estate because the rule
against perpetuities is not violated by the conveyance, and the term "forfeit," as used
in the documents before us, properly includes termination for lack of production. (2) 
We also conclude that because the award of attorney's fees was predicated on the
declaratory judgment in favor of Taylor, we must remand the issue to the trial court
for reconsideration in light of this opinion. We reverse and remand. (3)Background

 In 1919, Taylor's predecessors in interest were part of a larger group that
leased its interest in a mineral estate (the "Cade B Lease") to Marrs McLean,
Bowers's predecessor in interest. The terms of the lease provided that the lease
would last "so long as such mineral or minerals can be produced in paying
quantities." The lease reserved a one-eighth royalty interest in favor of Taylor's
predecessors.

 In 1927, Taylor's predecessors entered into a second agreement with McLean,
conveying to him a present portion of the reserved royalty interest, and a future one-third fee interest in the mineral estate itself. This conveyance stated,

But it is understood that if said lease should be forfeited,
then the one fortieth (1/40) royalty interest covering all the
land herein before described shall be cancelled and in lieu
thereof and in subdivision therefor, the said Marrs McLean
is to become vested with one-third (1/3) interest in the fee
title in and to the oil, gas and minerals in all portions of
said above described tracts that are now owned by the
grantors herein in severally or in undivided interest. The
intent of this transfer being to transfer to Marrs McLean
one-third (1/3) interest in the minerals, rights and royalty
in the foregoing tracts of lands that is shown by the deed
records of Galveston County to belong to the grantors
herein.


TO HAVE AND TO HOLD the above described mineral
and royalty interests in and to the foregoing premises to
Marrs McLean, his heirs and assigns or representatives;
and we bind ourselves, our heirs, assigns and successors to
warrant and defend the title to said mineral and royalty
interest unto the said Marrs McLean, his heirs, assigns and
successors . . . .


The 1927 deed between Taylor's predecessors and McLean expressly references and
incorporates the 1919 Cade B Lease. 

 Production under the lease ended in 1988. In April 2002, Taylor leased her
mineral interests in tracts formerly covered by the Cade B lease to Northstar
Producing, Inc. Northstar also took a lease from Ruth McLean Bowers for lands that
were also covered by Taylor's lease to Northstar. Northstar assigned both leases to
Stroud Production, L.L.C., which produced oil from two wells on the lands covered
by the new leases. Stroud paid Bowers royalties based the one-fortieth royalty and
the one-third mineral fee described in the 1927 deed. Stroud has since suspended
payment pending resolution of the present dispute.

 Taylor filed the present suit for declaratory judgment in October 2003. 
Taylor's first motion for summary judgment asserted that Bowers's royalty interest
had expired, and that the purported transfer of a one-third fee interest in the mineral
estate to Marrs McLean violated the rule against perpetuities. Taylor's second motion
for summary judgment contended in the alternative that the Cade B lease was never
"forfeited," but instead terminated for lack of production, and thus the condition
precedent to McLean's heirs' ownership has not occurred. The trial court granted
summary judgment on all grounds. Following a bench trial, the trial court denied
certain counterclaims by Bowers, (4) and awarded attorney's fees.

Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). When, as here, a summary judgment order does
not specify the grounds on which it was granted, we will affirm the judgment if any
one of the theories advanced before the trial court is meritorious. Atlantic Lloyds Ins.
Co. v. Butler, 137 S.W.3d 199, 208 (Tex. App.--Houston [1st Dist.] 2004, pet.
denied); see also Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex.
2004).

 Summary judgment is appropriate in cases involving the interpretation of an
unambiguous document. See Coker v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983)
(holding that if court can give certain or definite legal meaning or interpretation to
words of instrument, it is unambiguous and court may construe it as matter of law).
Under the standard of review for a traditional summary judgment, the moving party
must establish that no material fact issue exists, and that it is entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c); M.D. Anderson Hosp. and Tumor Inst. v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000). The motion must state the specific grounds
relied upon for summary judgment. Tex. R. Civ. P. 166a(c). In reviewing a
traditional summary judgment, we must indulge every reasonable inference in favor
of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve
any doubts in favor of the nonmovant. Valence Operating Co., 164 S.W.3d at 661. 
Declaratory judgments decided by summary judgment are reviewed under the same
standards of review that govern summary judgments generally. Lidawi v. Progressive
County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex. App.--Houston [14th Dist.] 2003,
no pet.).

The Rule Against Perpetuities

 Taylor's first motion for summary judgment sought relief on the grounds that
the conveyance of a one-third mineral fee interest to McLean was void at its
inception, because it would not vest within the time period prescribed by the rule
against perpetuities. The Texas constitution states that "[p]erpetuities . . . are contrary
to the genius of a free government, and shall never be allowed." Tex. Const. art. I,
§ 26. Texas courts have enforced this provision by applying the common law rule
against perpetuities. Mattern v. Herzog, 367 S.W.2d 312, 314 (Tex. 1963). Under
the rule, an interest is not valid unless it must vest, if at all, within 21 years after the
death of some life or lives in being at the time of the conveyance. Peveto v. Starkey,
645 S.W.2d 770, 772 (Tex. 1982). On appeal, Bowers contends, alternatively, that
Taylor's motion failed to distinguish between vesting-in-interest and vesting-in-possession, that the conveyance was of a present interest and not a future interest
subject to remote vesting, and that rules of construction direct us to treat the deed as
a present conveyance.

A. Taylor's first motion for summary judgment

 In her first motion for summary judgment, Taylor contends that Texas law is
"well settled" that deeds of the sort at issue here violate the rule against perpetuities. 
 Taylor relies on Peveto v. Starkey for the proposition that her predecessors in
interest created a springing executory interest in favor of McLean that violates the
rule. Peveto, 645 S.W.2d at 772. In Peveto, the supreme court reviewed an
instrument that provided that "This grant shall become effective only on the
expiration of the above described Royalty Deed to R.L. Peveyto [sic] dated April 23,
1960." Id. at 771. The court held that the words "effective only upon" (5) created a
future interest that might never vest--a "springing executory interest"--that violated
the rule against perpetuities. Id. at 772. Taylor contends that language in the 1927
conveyance between their predecessors and McLean, like the conveyance in Peveto,
creates a springing executory interest by stating that "if said lease should be forfeited,
then the one fortieth (1/40) royalty interest . . . shall be cancelled and in lieu thereof
and in subdivision therefor, the said Marrs McLean is to become vested with one-third (1/3) interest in the fee title in and to the oil, gas and minerals." Taylor asserts
that because the lease might not forfeit until some time outside the rule, McLean
might not vest in interest until some time outside the rule, and therefore the
conveyance violates the rule and was void.

B. Bowers's response to the motion for summary judgment 

 In response, Bowers contends that the 1927 deed does not convey a springing
executory interest, but instead conveys a presently vested interest in the possibility
of reverter that was created by the Cade B Lease. Bowers asserts that when the deed
is viewed as a whole, the intent of the parties was clearly to transfer the possibility
of reverter. Bowers contends that Taylor's construction fails to distinguish between
vesting in interest and vesting in possession. 

 Bowers also contends that Peveto is not controlling, and that instead we should
apply Jupiter Oil v. Snow, in which the supreme court reviewed a lease that stated that

[i]n the event the lease now on said land is forfeited or
terminated withou[t] producing mineral of any kind, then
the grantee herein or his assigns are to have and hold under
this conveyance an undivided 1/2 of all the oil. [sic] gas or
other mineral of whatsoever kind character in and under
the land herein described, and it is the intention of the
grantors herein that in the event said lease is forfeited, then
in that event the grantee is to have and hold an equal
undivided one half of all such minerals.


Jupiter Oil Co. v. Snow, 819 S.W.2d 466, 468 (Tex. 1991). The court found that this
conveyance successfully avoided the rule against perpetuities. Id. at 469. It held that
the effect of this conveyance was to expand the grantee's interest in the mineral estate
immediately upon termination of a prior lease, and therefore was a transfer of the
possibility of reverter. See id.; see also Bagby v. Bredthauer, 627 S.W.2d 190, 194
(Tex. App.--Austin 1981, no writ). (6)

C. Analysis

 Under Texas's "Four Corners" rule, the primary duty of a court construing an
unambiguous deed is to ascertain the intent of the parties from all the language in the
deed. Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991). We attempt to harmonize
all portions of the deed, and give effect to all provisions. Id. at 462. When two
instruments involve the same parties and relate to the same transaction, we read the
documents together in order to ascertain the parties' intent. See Fort Worth Indep.
Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000).

 An oil and gas "lease" is not a typical lease. Natural Gas Pipeline Co. of Amer.
v. Pool, 124 S.W.3d 188, 192 (Tex. 2003). Instead, the lessor (actually a grantor)
grants a mineral interest in fee simple determinable to the lessee (actually a grantee). 
Id. The lessor retains a possibility of reverter in the mineral estate. Id. Thus upon
termination of the "lease," the mineral estate reverts to the grantors of the lease, their
heirs, or their assigns. Jupiter Oil, 819 S.W.2d at 468. The grantor may sell or assign
the possibility of reverter. Id.

 Both parties to the present lawsuit point out that McLean was both the lessee
under the 1919 Cade B Lease and the grantee under the 1927 deed. We note that this
fact places this case on a different footing than both Peveto and Jupiter Oil. In those
cases, one party sought to take a mineral or royalty interest after the ending of a lease
in favor of another party. In Peveto, a grantor conveyed a term royalty interest to one
party, Peveto, and then conveyed a second royalty interest to a second party, Starkey,
which purported to take effect after Peveto's term royalty expired. Peveto, 645
S.W.2d at 771. In Jupiter Oil, the grantor's successors were not a party to the case. 
Instead, the lawsuit was between the successors in interest to the lessee of a mineral
tract, and the successors in interest to a grantee of an uncertain interest. Jupiter Oil,
819 S.W.2d at 467. 

 Because the 1919 Cade B Lease and the 1927 deed involve the same parties
and relate to the same transaction, we construe them together. See Fort Worth Indep.
Sch. Dist., 22 S.W.3d at 840. The grantors, as lessors in the 1919 Cade B Lease,
retained a possibility of reverter in the lands covered by the lease. If Taylor's
predecessors, as grantors in the 1927 deed, conveyed a one-third portion of their
possibility of reverter, then the rule against perpetuities is not implicated by the
transaction. See Jupiter Oil, 819 S.W.2d at 468. We conclude that such a transfer is
evidenced by the deed. 

 Jupiter Oil is on point. The conveyance before us contains "intent" language,
as does the conveyance approved by the supreme court in Jupiter Oil; the conveyance
disallowed in Peveto does not contain "intent" language. In addition, the intent
language in the conveyance at issue here is more explicit as to the intent of the parties
than Jupiter Oil. In Jupiter Oil, the intent was to make a transfer of a one-half
interest "in the event said lease is forfeited." Jupiter Oil, 819 S.W.2d at 468. In the
1927 deed, the intent was "to transfer to Marrs McLean one-third (1/3) interest in the
minerals, rights and royalty" without any mention of a future contingency. In
addition the habendum clause of the 1927 deed states that McLean was to take "the
above described mineral and royalty interests," with no mention of any delay or
contingency. 

 Peveto is distinguishable. That deed expressly states that the conveyance itself
is to become effective upon the occurrence of some uncertain future event. Peveto,
645 S.W.2d at 772. The supreme court focused on the language that the Peveto grant
was "effective only upon" the expiration of the underlying lease. Id. The court later
distinguished Peveto where that express language was absent. See Luckel, 819
S.W.2d at 464. Finally, Peveto appears to lack any language expressly stating the
intent of the parties to the conveyance in that case. Peveto, 645 S.W.2d at 771-72.

 Construing the 1927 deed as a whole, and not taking the "will become vested"
language in isolation, we conclude that the intent of the parties to the 1927 deed was
to make a present conveyance of the grantor's interest in the Cade B mineral estate. 
See Luckel, 819 S.W.2d at 461-62. That interest was a possibility of reverter, and a
transfer of the possibility of reverter does not violate the rule against perpetuities. Id.
at 464. We hold that Taylor's the ground asserted in Taylor's first motion--that the
1927 conveyance violated the rule against perpetuities--cannot support summary
judgment.

"Forfeit"

 Taylor's second motion for summary judgment contends that the condition
precedent for McLean and his successors to claim their possessory interest in the
Cade B mineral estate--that the Cade B Lease be "forfeited"--has not occurred.

A. Taylor's second motion for summary judgment

 Taylor asserts that "Texas law is well settled that termination for non-production is not a 'forfeiture[,]'" and that instead the Cade B Lease "terminated by
its own terms when it permanently ceased producing hydrocarbons in 1988." 
Forfeitures, Taylor contends, "are penal in nature . . . . [and] can only be established
by affirmative actions taken by the lessor." See, e.g., Hickernell v. Gregory, 224 S.W.
691, 695-98 (Tex. Civ. App.--Amarillo 1920, no writ). Since the Lease expired by
its terms for non-production in 1988, Taylor argues, the Lease was never forfeited,
and the contingent grant of one-third of the mineral estate was never triggered. (7) 

 In this appeal, as in the hearing on its motions before trial court, Taylor
contends that within the four corners of the 1927 deed, the intent of the parties is clear
when it is remembered that McLean is the mineral lessee as well as the deed grantee. (8) 
Under Taylor's proposed construction, the 1927 deed gave McLean a one-fortieth
royalty interest and what Taylor calls a "springing executory interest" in one-third of
Taylor's portion of the Cade B mineral estate. The one-third interest was not an
outright grant, but instead "a potent incentive to discourage the forfeiture of the Cade
B Lease," as stated in the group's brief to this Court. Taylor explains that the
possible loss of the one-third fee interest in the mineral estate was meant to act as a
penalty to prevent her predecessors from effecting a forfeiture.

B. Bowers's response to the second motion for summary judgment

 Bowers responds that the term "forfeited" in the deed and the lease, like the
phrase "is to become vested" in the deed, ought not to be considered in a vacuum, but
in concert with the deed and lease as a whole. Particularly, Bowers points to a clause
in the 1919 lease that states that 

Under the penalty of forfeiture of the rights and estates
hereby granted, operations for the drilling of a well for oil,
gas, or minerals is to be begun within twelve months from
the time of the final execution and delivery of this contract,
but it is granted to the lessee the right to prevent such
forfeiture by paying to the lessor, or depositing to their
credit in the Gulf National Bank of Beaumont, Texas, the
sum of Fifty Three Hundred Dollars on or before the
expiration of the said twelve month period, which will
extend the time within which operation for the drilling of
a well is to be begun, for an additional twelve month
period. 


Bowers contends that this language shows that the term "forfeiture," as used in the
deed, refers to automatic termination of the lease, as for failure to pay delay rentals. 
Thus, according to Bowers, forfeiture includes automatic termination in addition to
Taylor's more limited definition that requires some affirmative act. Bowers also
points again to the intent clause in the deed as a key to construing the deed as a whole
to show that the parties to the deed meant to transfer a mineral interest in addition to
a royalty interest.

C. Analysis

 Taylor correctly notes that Bowers cites as authority a line of cases that does
not include any clause that refers to "forfeiture" standing alone, but instead that use
"forfeiture" in concert with other words evidencing the end of a mineral lease. See,
e.g., Jupiter Oil, 819 S.W.2d at 468 ("forfeited or terminated without producing
mineral of any kind"); Fleming v. Ashcroft, 175 S.W.2d 401, 404 (Tex. 1943)
("cancelled or forfeited"). We also note that in certain contexts the term "forfeiture"
is incompatible with termination of a lease for cessation of production. See, e.g.,
Woodson Oil Co. v. Pruett, 281 S.W.2d 159, 164 (Tex. Civ. App.--San Antonio
1955, writ ref'd n.r.e.) (where lessee asserted ratification of lease by acceptance of
royalty payment, there was no principle of forfeiture when lease terminated by its
own provision for cessation of production); Sunray DX Oil Co. v. Texaco, Inc., 417
S.W.2d 424, 427-28 (Tex. Civ. App.--El Paso 1967, writ ref'd n.r.e.) (no forfeiture
where parties contracted that lease would terminate upon cessation of production in
paying quantities).

 We agree with Bowers that the term, as used here, is intended to be read more
broadly, to include automatic termination. See Riley v. Meriwether, 780 S.W.2d 919,
923 (Tex. App.--El Paso 1989, writ denied) ("While generally forfeitures may not
be favored in the law, this is not true when a lease terminates by its own provisions
due to a cessation of production."); Witherspoon v. Green, 274 S.W. 170, 171 (Tex.
Civ. App.--Dallas 1925, no writ) (term "forfeited" included termination of lease by
its terms for failure to pay delay rental). The 1919 Cade B Lease uses the phrase
"penalty of forfeiture" to refer to the result of failure to begin operation or failure to
pay delay rentals, either of which generally would lead to automatic termination of
the lease by its own terms. We therefore disagree with Taylor that "forfeiture," as
used here, is limited only to termination of the lease by affirmative action of the
lessor.

 We must look to the 1927 Deed as a whole, in addition to the 1919 Cade B
Lease, to determine what the parties intended when they stated that "if said lease
should be forfeited, then the one fortieth (1/40) royalty interest . . . shall be cancelled
and in lieu thereof and in subdivision therefor, the said Marrs McLean is to become
vested with one-third (1/3) interest in the fee title." Clauses in the Deed state that the
intent was "to transfer to Marrs McLean one-third (1/3) interest in the minerals, rights
and royalty" and that McLean was "TO HAVE AND TO HOLD the above described
mineral and royalty interests." As we have concluded, these clauses show that the
intent of the parties was to transfer a possibility of reverter, which takes effect at the
termination of the lease for any reason, including cessation of production. See Jupiter
Oil, 819 S.W.2d at 468. Furthermore, the 1919 lease states that "forfeiture" was the
penalty for failing to perform acts that generally would lead to the termination of the
lease by its own terms, just as it would terminate for lack of production. We conclude
that Taylor's narrow definition of the term "forfeit" does not apply to the 1919 lease
or the 1927 deed because "forfeit," as used in the documents before us, properly
includes termination for lack of production. We hold that the trial court erred by
rendering a declaratory judgment that Bowers did not receive a fee simple interest in
the mineral estate.

Attorney's Fees

 Bowers contends on appeal that declaratory judgment is not the appropriate
vehicle for Taylor's lawsuit. They assert that the suit is in the nature of a trespass to
try title action, and therefore the trial court erred by awarding attorney's fees under
the Declaratory Judgments Act. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009. 
In the alternative, Bowers asserts that because the trial court's declaratory judgment
was error, its award of attorney's fees was not equitable or just, and therefore was
error. 

 Following a hearing, the trial court issued findings of fact and conclusions of
law that stated that Taylor was entitled to attorney's fees because "Plaintiffs prevailed
on their request for a declaratory judgment concerning the meaning and legal effect
of the Deed's terms." Having determined that the trial court erred by granting
summary judgment in favor of Taylor in the declaratory judgment action, we reverse
and remand the trial court's award of attorney's fees to Taylor that were entered in
accordance with that declaratory judgment for further proceedings not inconsistent
with this opinion.

 
 Conclusion


 We hold that summary judgment was improperly granted by rendering a
declaratory judgment that Bowers did not receive a fee simple interest in the mineral
estate. We reverse the judgment of the trial court and remand for further proceedings
not inconsistent with this opinion.






 Elsa Alcala

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.



 
1. Taylor also sought and was granted summary judgment on the grounds that Bowers's
one-fortieth royalty interest expired in 1988. The trial court's summary judgment
order stated that "both of Plaintiffs' motions for summary judgment are granted in all
respects." The final judgment incorporated the summary judgment order. Bowers
does not appeal the trial court's judgment that its one-fortieth royalty interest has
expired
.
2. Bowers contends in the alternative that the conveyance at issue is ambiguous. Having
construed the conveyance as we have, we do not reach this alternative issue on appeal.
3. Because Bowers never moved for summary judgment below, the trial court would
have been unable to render judgment in Bowers's favor. See Tex. R. App. P. 43.3
(appellate court must render judgment that trial court should have rendered).
4. Bowers has not appealed the denial of its counterclaims that seek damages for breach
of warranty of title or, alternatively, the imposition of a constructive trust.
5. The supreme court quotes the Peveto lease as stating that the grant is to become
"effective only on" the expiration of a deed as well as "effective only upon" the
expiration of a deed. Peveto v. Starkey, 645 S.W.2d 770, 771, 772 (Tex. 1982). 
6. Bowers asserts a number of additional grounds in its response to the motion for
summary judgment that it does not continue to assert on appeal.
7. Taylor further asserts on appeal that McLean, having used the term "forfeit" in the
1919 lease, knew its proper meaning and would have intended that same meaning in
the 1927 deed. This argument was not presented in the motion for summary
judgment, however, and thus it is not a ground on which the trial court could have
ruled.
8. The deed expressly incorporates the mineral lease under which McLean is lessee.