Opinion issued March 11, 2010



 

 

 

 
 

 



 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00682-CV

____________


LOIS DOHERTY, Appellant


v.


JPMORGAN CHASE BANK, N.A., Appellee






On Appeal from the Probate Court Number Two 

Harris County, Texas

Trial Court Cause No. 116,180-401






 

MEMORANDUM OPINION

 Appellant, Lois Doherty ("Doherty"), brings this appeal to contest the trial
court's grant of summary judgment in favor of appellee, JPMorgan Chase Bank 
("JPMorgan"). In four issues, Doherty contends that the trial court erred by granting
summary judgment in JPMorgan's favor because (1) the court erroneously concluded
that the distribution requested by Doherty was discretionary, not mandatory; (2) the
court erroneously found that JPMorgan had not failed or refused to continue to act
with respect to Doherty's requested distribution; (3) the court erroneously failed to
give effect to Paragraph 6.5 of the Trust Instrument, which allows Doherty to appoint
a successor trustee after JPMorgan refused to expressly grant or deny a distribution;
and (4) alternatively, the evidence presented by JPMorgan showed its intent to deny
the requested distribution. We reverse and render judgment in favor of Doherty. 

Background

 Doherty is the beneficiary of the Lois Doherty Trust ("the Trust"), created by
her late husband Wilfred T. Doherty in his Last Will and Testament ("the Will"). The
trustee is JPMorgan, and it and predecessor organizations have served in that capacity
since 1972. 

 Paragraph 3.3 of the Trust mandates that certain disbursements from the Trust
are to be made to Doherty upon her request, specifically those funds that she requests
to provide for her "comfort, health, support or maintenance."

 My Trustee shall distribute the net income from the trust created by this
Article to my wife at least quarterly. My Trustee shall also distribute to
my wife such amounts of trust principal as she may request to provide
for her comfort, health, support or maintenance, in order to maintain her
in accordance with the standard of living to which she was accustomed
at the time of my death. The rights of withdrawal of principal hereby
given to my wife shall be construed liberally, and, in addition, my
Trustee may, in such Trustee's sole discretion, distribute to my wife
such amounts of trust principal as such Trustee deems desirable from
time to time to provide liberally for her comfort, happiness, health,
support or maintenance, including principal which may be requested by
my wife to make gifts to any one or more of my descendants.

 

 Paragraph 3.6 directs the distribution of Trust proceeds and principal after
Doherty's death, and makes those descendants of Wilfred T. Doherty living at the
time of Doherty's death beneficiaries. If none of Wilfred T. Doherty's descendants
are living at the time of Doherty's death, the Trust funds are then to be distributed to
the Texas A&M University Development Foundation. Finally, Paragraph 6.5 allows Doherty to appoint a successor executor or
trustee if the named executor or trustee fails or refuses to act or continue to act.

 Upon the failure or refusal of any corporate Executor or Trustee to act
or continue to act, my wife shall have the power for a period of thirty
days to appoint an alternate or successor.

 In 2005, Doherty suffered a stroke that left her physically impaired and she
moved into her daughter's home. Doherty's daughter's home did not have a
handicap-accessible bathroom, which Doherty needed after her stroke. Doherty
therefore sent a letter on October 23, 2006 to Don Eplen at JPMorgan, informing him
of her physical impairment and her need for funds to modify the bathroom in her
daughter's home. Doherty stated that she did not want to be a burden to her daughter
and that she "need[ed] funds readily available in order to pay for any special needs
that [she had], such as modifying and installing special equipment for the bathroom,
in addition to [her] living expenses." She asked that JPMorgan therefore release all
of the funds in her trust account and combine them into another account she held. 

 JPMorgan responded via letter, stating that it had "carefully reviewed the terms
of the trust, the balances of both [Doherty's] agency and trust accounts, and carefully
weighed the content of your October 23rd letter together with the terms of
[Doherty's] request to have funds readily available." JPMorgan noted that "the terms
of [Doherty's] husband's will contains broad distribution provisions that could be
followed in making distributions for [Doherty's] special needs and for modifying and
installing special equipment for the bathroom in the new house." To that end,
JPMorgan requested "written estimates from at least two contractors before making
distributions for this purpose." As to Doherty's request that the funds remaining in
the trust account be released into another of her accounts, JPMorgan stated that it
could not do so "because it is not in the best interest of the trust or its remained
persons, whoever they may be." The letter explained,

 By this I mean that you are given a testamentary, general power of
appointment to determine who should receive any trust funds remaining
in the trust at your demise. Therefore, by distributing all of the trust
(terminating it) now, future interests in the trust may be subverted thus
casting doubt on the prior actions of the Trustee. Because of this
situation, we would only terminate the trust now upon a court-sanctioned judicial release.


Finally, JPMorgan's letter concluded by noting Doherty's desire to have ready cash
available, stating, "the balance in your agency account is about the same as the trust
and contains an amount of cash readily available which, as you know, may be
withdrawn from your account at any time."

 After sending this letter to Doherty, JPMorgan was contacted by Nicole Sain,
Doherty's attorney. Sain requested that JPMorgan resign as trustee. Sain sent a letter
to Don Eplen at JPMorgan, stating that "there have been several requests made by .
. . Ms. Doherty . . . that have not been met with favorable responses, and have led to
[her] desire to have JPMorgan resign as trustee . . . . I am therefore requesting that
JPMorgan resign as trustee pursuant to Texas Property Code section 113.081." Eplen
replied that "JPMorgan does not usually withdraw without receiving full releases, and
that in this case, the bank would require a judicial release." 

 Notwithstanding Sain's request that JPMorgan resign as trustee, Doherty then
forwarded two estimates for the bathroom remodel to JPMorgan. After receiving the
estimates, on November 20, 2006, JPMorgan informed Doherty via letter that it had
received her request for "approximately $10,000-$11,000 from the trust created under
your late husband's will." However, the letter further stated,

 Making a distribution from this trust would entail our exercising
discretion as Trustee under the provisions of the will. Because we have
been contacted by an attorney acting on your behalf, Ms. Nicole K. Sain,
with a request to resign as Trustee of the referenced Trust, we are
reluctant to continue exercising our discretion regarding this special
request you have made. We feel that the successor trustee would be the
proper decision maker regarding your request for this distribution. If
timing is of critical importance for access to funds, there are funds
available in the Agency account . . . . 


 Deborah has further indicated that you are, in fact, undecided about
whether to have the attorney pursue changing Trustees for your trust. 
However, because we have been contacted by the attorney on your
behalf, we feel that she should be a party to our communication until we
receive different information.

At some point, JPMorgan indicated, via handwritten notation on its copies of the
remodeling estimates, that Doherty's requested disbursement had been "denied."

 On December 5, 2006, Regions Bank informed JPMorgan that it had been
named successor trustee by Doherty and asked that JPMorgan immediately transfer
all Doherty's assets to Regions Bank.

 Nine months later, Doherty filed a petition for declaratory judgment. Doherty
sought a declaration that, in light of JPMorgan's refusal to act, the Will allowed her
to appoint Regions Bank as a successor trustee to JPMorgan. She also sought to
recover her attorney's fees and costs under the Texas Declaratory Judgments Act. 
JPMorgan filed a general denial.

 Doherty and JPMorgan filed cross-motions for summary judgment. Doherty's
motion for summary judgment alleged that JPMorgan had refused to act under the
terms of the Trust, and under the terms of the Trust, this refusal to act entitled
Doherty to appoint Regions Bank as successor trustee. JPMorgan's motion sought
summary judgment on the issue that it had not failed to act under the terms of the
Trust and further sought summary judgment in its favor on all of Doherty's claims. 
The trial court granted JPMorgan's motion for summary judgment and denied
Doherty's motion. The trial court's order stated, 

 It is therefore,

 ORDERED, ADJUDGED and DECREED that JPMorgan did not
fail to act with regard to denying Lois Doherty's requested Trust
distributions. It is further,


 ORDERED, ADJUDGED and DECREED that Doherty's
pleading to the Court to determine whether JPMorgan failed to exercise
its discretion presents no justiciable controversy and therefore should
not be heard by the Court. It is further,


 ORDERED, ADJUDGED and DECREED that JPMorgan's
Motion for Summary Judgment is GRANTED. It is further,


 ORDERED, ADJUDGED and DECREED that Doherty's Motion
for Summary Judgment is DENIED. It is further, 


 ORDERED, ADJUDGED and DECREED that this order granting
JPMorgan's Motion for Summary Judgment is final.

Discussion

 On appeal, Doherty contends that the trial court erred by granting summary
judgment in JPMorgan's favor because (1) the court erroneously concluded that the
distribution requested by Doherty was discretionary, not mandatory; (2) the court
erroneously found that JPMorgan had not failed or refused to continue to act with
respect to Doherty's requested distribution; (3) the court erroneously failed to give
effect to Paragraph 6.5 of the Trust Instrument, which allows Doherty to appoint a
successor trustee after JPMorgan refused to expressly grant or deny a distribution;
and (4) alternatively, the evidence presented by JPMorgan showed its intent to deny
the requested distribution. 

Standard of Review

 Declaratory judgments rendered by summary judgment are reviewed under the
same standards as govern summary judgments generally. Bowers v. Taylor, 263
S.W.3d 260, 264 (Tex. App.--Houston [1st Dist.] 2007, no pet.). We review a trial
court's summary judgment de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005); Provident Life Accid. Ins. Co. v. Knott, 128 S.W.3d 211, 215
(Tex. 2003). Under the standard for summary judgment, the movant has the burden
to show that no genuine issue of material fact exists and that the trial court should
grant a judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick
v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). The motion
must state the specific grounds relied upon for summary judgment. Tex. R. Civ. P.
166a(c). A defendant moving for summary judgment must conclusively negate at least
one essential element of each of the plaintiff's causes of action or conclusively
establish each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997). A matter is conclusively established if reasonable
people could not differ as to the conclusion to be drawn from the evidence. City of
Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).

 When reviewing a summary judgment, we take as true all evidence favorable
to the nonmovant and indulge every reasonable inference and resolve any doubts in
the nonmovant's favor. Dorsett, 164 S .W.3d at 661; Knott, 128 S.W.3d at 215; Sci.
Spectrum, Inc., 941 S.W.2d at 911. When both parties move for summary judgment
and the trial court grants one motion and denies the other, the reviewing court should
review the summary judgment evidence presented by both sides, determine all
questions presented, and render the judgment that the trial court should have
rendered. Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex., 136 S.W.3d
643, 648 (Tex. 2004).

 We interpret trust instruments the same way as wills, contracts, and other legal
documents. Alpert v. Riley, 274 S.W.3d 277, 286 (Tex. App.-- Houston [1st Dist.]
2008, no pet.). The meaning of the trust instrument is a question of law when no
ambiguity exists. Id. (citing Nowlin v. Frost Nat'l Bank, 908 S.W.2d 283, 286 (Tex.
App.--Houston [1st Dist.] 1995, no writ)). If the court can give a definite legal
meaning or interpretation to an instrument's words, it is unambiguous, and the court
may construe the instrument as a matter of law. Id. (citing Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983)). 

 I. Did the trial court err by concluding that Doherty's requested
distribution requested was discretionary, not mandatory?


 Doherty first complains that the trial court erred by concluding that the
distribution she requested was discretionary, not mandatory, under the terms of the
Trust. Paragraph 3.3. of the Trust states that JPMorgan "shall also distribute to
[Doherty] such amounts of trust principal as she may request to provide for her
comfort, health, support or maintenance, in order to maintain her in accordance with
the standard of living to which she was accustomed at the time of [her husband's]
death." This right to withdraw principal is to be construed "liberally." In addition,
the Trust allowed JPMorgan, in its sole discretion, to "distribute to [Doherty] such
amounts of trust principal as [JPMorgan] deems desirable from time to time to
provide liberally for her comfort, happiness, health, support or maintenance,
including principal which may be requested by [Doherty] to make gifts to any one or
more of [her husband's] descendants." 

 JPMorgan, for its part, does not dispute that the disbursement Doherty
requested was for her "comfort, health, support or maintenance." Doherty argues that
the terms of the Trust therefore compelled JPMorgan to make the requested
disbursement, so as to allow Doherty to remodel the bathroom in her daughter's house
for her use after her incapacitation. We agree. 

 "A trustee, as a fiduciary, has equitable duties to hold and manage the property
for the benefit of the beneficiaries." Alpert, 274 S.W.3d at 291 (citing Tex. Prop.
Code Ann. §§ 113.051, 113.056(a) (Vernon 2007)). "Certain of those fiduciary
duties are nondelegable." Id. (citing Tex. Commerce Bank, N.A. v. Grizzle, 96 S.W.3d
240, 249 (Tex. 2002); Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377, 387-88
(1945); Transamerican Leasing Co. v. Three Bears, Inc., 586 S.W.2d 472, 476 (Tex.
1979) ("The general rule is that a trustee may not delegate his discretionary power to
another.")). 

 The plain language of Paragraph 3.3 required JPMorgan to distribute funds
from the principal of the Trust when requested to do so by Doherty so long as those
funds were requested in order to "provide for her comfort, health, support or
maintenance, in order to maintain her in accordance with the standard of living to
which she was accustomed at the time of [her husband's] death." Paragraph 3.3
contains a second, discretionary power that allows JPMorgan to distribute such funds
as it, "in [its] sole discretion . . . deems desirable from time to time to provide
liberally for [Doherty's] comfort, happiness, health, support or maintenance,
including principal which may be requested by my wife to make gifts to any one or
more of my descendants." This latter, discretionary power does not restrict or affect
JPMorgan's mandatory duty to make distributions when requested by Doherty to
provide for her comfort, health, support or maintenance. JPMorgan's duty to make
distributions when Doherty requested funds to remodel the bathroom at her
daughter's house for her own use was therefore absolute and nondelegable. See, e.g.,
Alpert, 274 S.W.3d at 291.

 JPMorgan's briefing points us to Di Portanova v. Monroe, 229 S.W.3d 324
(Tex. App.-- Houston [1st Dist.] 2006, pet. denied), and argues that Di Portanova
requires we conclude that the disbursement Doherty requested for the bathroom
remodel was discretionary, that JPMorgan's denial of that request was well within its
discretion as trustee, and that JPMorgan's purported exercise of discretion may not
be disturbed by the trial court. We disagree. The trust language in Di Portanova is
substantially different than the language at issue here, and the outcome in that case
was determined by that language. The clear language of the Trust at issue here,
coupled with the evidence in the record and JPMorgan's concession that the
disbursement was for Doherty's "comfort, health, support or maintenance, in order
to maintain her in accordance with the standard of living to which she was
accustomed at the time of [her husband's] death," establishes that the disbursement
to Ms. Doherty for the bathroom remodel was compulsory under the terms of the
Trust and JPMorgan's failure to make the disbursement could not have been excused
by the trial court on the grounds presented. See, e.g., Caldwell v. River Oaks Trust
Co., No. 01-94-00273-CV, 1996 WL 227520, at *12 (Tex. App.--Houston [1st Dist.]
May 2, 1996, writ denied)(not designated for publication) ("A power is considered
discretionary if the trustee may decide whether or not to exercise it."); Aguilar v.
Garcia, 880 S.W.2d 279, 281 (Tex. App.--Houston [14th Dist] 1994, orig.
proceeding) (trial court did not have power to modify mandatory duties of trustee in
trust instruments). Finally, Di Portanova did not address the circumstances presented
in this case, where JPMorgan delegated its purported authority and discretion to
another yet to be named successor trustee, effectively stonewalling the beneficiary. 
 We sustain Doherty's issue. 

 II. Did the trial court err by finding that JPMorgan had not failed
or refused to continue to act under the terms of the Trust?


 Next, Doherty complains that the trial court erred by finding that "JPMorgan
had not failed or refused to continue to act with respect to Doherty's requested
distribution." Doherty first contests whether her requested disbursement was actually
"denied," instead contending that JPMorgan "fail[ed] to explicitly grant or deny a
request for a distribution to make a bathroom handicap-accessible, and suggest[ed]
that a nonexistent successor trustee make the decision . . ." As evidence that
JPMorgan never explicitly responded "yes" or "no" to her request for funds, Doherty
points to the November 20, 2006 letter in which JPMorgan acknowledged that it had
received Doherty's request for a disbursement to remodel the bathroom at her
daughter's house for her use, but that it was "reluctant to continue exercising [its]
discretion" in light of Doherty's attorney's request that JPMorgan resign as trustee
and the confusion regarding whether Doherty did, in fact, want JPMorgan to resign. 
Rather than making the distribution, JPMorgan informed Doherty, "We feel that the
successor trustee would be the proper decision maker regarding your request for this
distribution." Alternatively, Doherty contends that JPMorgan's actions can be
deemed a "failure to act" under the terms of the Trust because it not only denied her
requested disbursement but also stated that it deferred action on her request in favor
of a future successor trustee, and those actions violated JPMorgan's duties under the
terms of the Trust. We agree with her second contention. 

 "It is fundamental that a trustee has a duty to obey [a trust's payment]
instructions, unless it is impossible or illegal for him to do so, or unless he is excused
by the court." G. Bogert, The Law of Trusts and Trustees § 811 (2d ed. 1979). 
None of those circumstances is established here. Instead, JPMorgan's sole
explanation for its failure to act is that the payment to Doherty for the remodel of the
bathroom was committed to its discretion by Paragraph 3.3 of the Trust. As discussed
above, that contention is without merit based upon the record before us. Nor, as we
discussed above, was JPMorgan justified in deferring Doherty to an unknown
successor trustee in the event it withdrew as trustee at a future date. See, e.g.,
Meisner v. Taylor, 120 S.W. 1014, 1016 (Tex. Civ. App.--1909) (trustee lacked
power to delegate his duties to others and his failure to personally fulfill mandatory
duty violated the explicit terms of trust). Based upon the record before us, we sustain
Doherty's issue.

 III. Did the trial court err by failing to give effect to Paragraph 6.5
of the Trust Instrument?


 Doherty also contends that the trial court erred because it failed to give effect
to Paragraph 6.5 of the Trust Instrument. Paragraph 6.5 states, "Upon the failure or
refusal of any corporate Executor or Trustee to act or continue to act, my wife shall
have the power for a period of thirty days to appoint an alternate or successor." As
stated above, in light of the terms of the Trust at issue and JPMorgan's November 20,
2006 letter, JPMorgan failed to act as the trustee with respect to Doherty's request to
remodel a bathroom for her use. We hold that JPMorgan's actions as trustee, outlined
above, triggered the provisions of Paragraph 6.5 and allowed Doherty to appoint a
successor trustee. Based upon the record before us, including JPMorgan's November
20, 2006 letter deferring action on Doherty's request to a future unnamed successor
trustee, the trial court erred by granting summary judgment in JPMorgan's favor and
denying Doherty's motion for summary judgment on these grounds. We sustain
Doherty's issue. Because this point is dispositive of the appeal, we do not reach
Doherty's fourth issue. 

Conclusion

 We reverse the judgment of the trial court and render judgment in favor of
Doherty on her declaratory judgment claim. 





 George C. Hanks, Jr.

 Justice


Panel consists of Justices Jennings, Hanks and Bland.