**Opinion issued May 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00017-CV

————————————

## MARK E. BIEDRYCK, Appellant

## V.

## U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE, FIRST BOSTON MORTGAGE SECURITIES CORP., HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2005-6, Appellee

On Appeal from the 129th District Court
Harris County, Texas
Trial Court Case No. 2013-01631

## MEMORANDUM OPINION

Appellant, Mark E. Biedryck, challenges the district court's rendition of summary judgment in favor of appellee, U.S. Bank National Association, as

Trustee for Credit Suisse, First Boston Mortgage Securities Corp., Home Equity Pass-Through Certificates, Series 2005-6 ("U.S. Bank"), in Biedryck's declaratory-judgment action against U.S. Bank. In two issues, Biedryck contends that the district court erred in granting U.S. Bank summary judgment.

We affirm.

## Background

In his petition, Biedryck alleged that in 2005, he obtained a home equity loan from U.S. Bank against his real property located at 7400 Bellerive in Houston (the "property"). He later defaulted on the note, and, in August 2007, U.S. Bank filed an "Application for Home Equity Foreclosure Order," ("application for foreclosure"),[1] which it later dismissed. In December 2007, U.S. Bank filed a second application for foreclosure, asserting that Biedryck had "failed to remit the monthly payment [that] became due in March 2007, and every monthly installment [that had] become due since that date." And, as of December 10, 2007, the loan was "10 monthly payments in arrears." Although the district court granted the second application on April 1, 2008,[2] U.S. Bank did not foreclose on the property.

---

[1]  *See* TEX. R. CIV. P. 736 (providing for expedited order allowing foreclosure on certain liens).

[2]  Biedryck asserted in his petition that the district court granted the application on "August 1, 2008," citing "Plaintiff's Exhibit 1," which he attached to his petition. However, Exhibit 1 reflects that the district court signed the order on April 1, 2008.

2

In January 2009, U.S. Bank filed a third application for foreclosure, asserting that Biedryck had "failed to remit the monthly payment [that] became due in July 2007, and every monthly installment [that had] become due since that date." And, as of December 18, 2008, the loan was "18 monthly payments in arrears." Again, although the district court granted the third application, U.S. Bank did not foreclose.

In August 2010, U.S. Bank filed a fourth application for foreclosure, asserting that Biedryck had "failed to remit the monthly payment [that] became due in May 2008, and every monthly installment [that had] become due since that date." And, as of July 28, 2010, the loan was "27 monthly payments in arrears." However, the district court dismissed the fourth application.

Finally, on September 20, 2012, U.S. Bank filed a fifth application for foreclosure. After Biedryck filed the instant declaratory-judgment action, the district court dismissed U.S. Bank's application.[3]

Asserting that U.S. Bank's "cause of action on the defaulted [n]ote accrued when the March 2007 payment became overdue" and the "default has never been cured," Biedryck sought a declaration that U.S. Bank's "lien and power of sale

---

[3] *See* TEX. R. CIV. P. 736.11(a), (c) (requiring dismissal of application if respondent files original proceeding contesting right to foreclose); *Huston v. U.S. Bank Nat. Ass'n*, 359 S.W.3d 679, 683 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding counterclaim for declaratory relief not allowed in rule 736 foreclosure proceeding; however, separate lawsuit to contest right to foreclose allowed).

have expired as a matter of law." He argued that because a four-year statute of limitations applies,[4] U.S. Bank's "lien and power of sale" expired in March 2011. He further asserted that U.S. Bank's September 20, 2012 application for foreclosure was filed after the expiration of the limitations period.

U.S. Bank answered, generally denying Biedryck's allegations and arguing that his declaratory-judgment action is barred because it had abandoned its acceleration of the note. In its summary-judgment motion, U.S. Bank argued that it is entitled to judgment as a matter of law because the "limitations period has not run." It asserted that in 2005, Biedryck executed a promissory note and deed of trust[5] to obtain a home equity loan in the amount of $50,800 against the property; in 2006, Biedryck defaulted on his payments; and, in November 2007, it sent him a "Notice of Default and Intent to Accelerate." U.S. Bank further asserted that "[a]ssuming [Biedryck's] allegations are true, [it] subsequently accelerated the maturity of the debt in December 2007." However, in February, March, and April 2008, it accepted payments from Biedryck in the amounts of $1,413.00, $718.93, and $718.93, respectively.

In September 2008, after Biedryck had once again defaulted, U.S. Bank again sent him a Notice of Default and Intent to Accelerate. And on December 17,

---

[4]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035 (Vernon 2002).

[5]     The promissory note and deed of trust were originally made payable to Argent Mortgage Company, LLC. On March 6, 2007, Argent assigned the note and deed of trust to U.S. Bank. Argent is not a party to this appeal.

4

2008, it accelerated the maturity of the debt and sent Biedryck a "Notice of Acceleration." On May 20, 2009, however, "[i]n an attempt to assist [Biedryck] to bring his loan back up to date," U.S. Bank and Biedryck entered into a "Special Forbearance Agreement" ("SFA"), "whereby the parties agreed to a revised payment schedule in order to catch [Biedryck] up on his delinquent payments." And U.S. Bank, in accordance with the SFA, then accepted a payment from Biedryck in May 2009 in the amount of $700.00. It also accepted payments in the amount of $747.28 each month from June through August 2009. On December 5, 2009, the parties entered into a "Loan Modification Agreement" ("LMA"), pursuant to which U.S. Bank capitalized past-due amounts and lowered Biedryck's payments and interest rate. Biedryck promised to make monthly payments of $308.82 beginning January 2010.

In January 2010, after Biedryck had not remitted payment in accordance with the LMA, U.S. Bank and Biedryck entered into a second SFA, again rearranging his payment plan. U.S. Bank then accepted payments from him from February through April 2010.

After April 2010, however, Biedryck again stopped making payments, and in June 2010, U.S. Bank again sent him a Notice of Default and Intent to Accelerate. In July 2010, it accelerated the maturity of the debt and sent Bierdryck a Notice of Acceleration. In August 2010, however, U.S. Bank and Biedryck

5

entered into a third SFA, "whereby the parties agreed to a revised payment schedule in order to catch [Biedryck] up on his delinquent payments." U.S. Bank then accepted payments from Biedryck from August 2010 through March 2011.

After March 2011, however, Biedryck again stopped making payments, and on July 6, 2012, U.S. Bank again sent him a Notice of Default and Intent to Accelerate. On August 7, 2012, it accelerated the maturity of the debt and sent Biedryck a Notice of Acceleration. And on September 20, 2012, U.S. Bank filed an application for foreclosure.[6] Biedryck then filed the instant action.[7]

U.S. Bank further asserted in its summary-judgment motion that its 2012 "foreclosure cause of action . . . accrued on August 7, 2012, the date that [it] accelerated the maturity of the debt and sent [Biedryck] a Notice of Acceleration." It noted that "while it is true that [it] accelerated the loan several times prior, all of those occasions were abandoned or otherwise waived by [] accepting payments from [Biedryck] and entering into loan forbearance agreements." To its summary-judgment motion, U.S. Bank attached a copy of the note, the deed of trust, Biedryck's payment history, its Notices of Default and Intent to Accelerate, its Notices of Acceleration, and the parties' SFAs and LMA.

---

[6]   Cause number 2012-55337 (80th Dist. Ct., Harris Cnty., Tex.); *see* TEX. R. CIV. P. 736.

[7]   *See* TEX. R. CIV. P. 736.11(a), (c) (requiring dismissal of application if respondent files original proceeding contesting right to foreclose).

In his response to U.S. Bank's summary-judgment motion, Biedryck asserted that U.S. Bank's December 21, 2007 application for foreclosure and the district court's April 1, 2008 "Foreclosure Order" "prevent [it] from claiming that its cause of action had not accrued"; U.S. Bank could have executed an agreement extending the limitations period, but did not; and the SFAs do not constitute "abandonments of acceleration." And he argued that the 2009 LMA is void because it does not comply with the Texas Constitution.

After a hearing, the district court granted U.S. Bank summary judgment, denying Biedryck's request for a declaration.

**Standard of Review**

Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. *Bowers v. Taylor*, 263 S.W.3d 260, 264 (Tex. App.—Houston [1st Dist.] 2007, no pet.). To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v.*

7

*Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549.

## Limitations

In his first issue, Biedryck argues that the district court erred in granting U.S. Bank summary judgment because it filed its application to foreclose in 2007, the district court granted the application in 2008, and more than four years have passed since its action accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b) (Vernon 2002) ("A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the cause of action accrues.").

It is true that "[o]n the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void." *Id.* § 16.035(d). However, "[i]f a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." *Id.* § 16.035(e); *Holy Cross Church of God in Christ v.*

*Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (noting section 16.035 modifies general rule that claim accrues and limitations begins to run on each installment when it becomes due).

"If a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated." *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Acceleration requires (1) notice of intent to accelerate and (2) notice of acceleration. *Holy Cross*, 44 S.W.3d at 566. Both notices must be "clear and unequivocal." *Id.* (quoting *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991)).

U.S. Bank's summary-judgment evidence establishes that, under its terms, Biedryck's note would have matured on April 1, 2035. However, U.S. Bank on July 6, 2012, sent Biedryck a Notice of Default and Intent to Accelerate. And, on August 7, 2012, U.S. Bank sent Biedryck a "Notice of Acceleration," stating that it had not received payment and therefore had "elected to accelerate the maturity of the debt." *See Holy Cross*, 44 S.W.3d at 566 (noting acceleration requires notice of intent to accelerate and notice of acceleration). Thus, U.S. Bank's cause of action accrued on August 7, 2012, the date that it accelerated Biedryck's debt. *See Khan*, 371 S.W.3d at 353 (noting date of acceleration constitutes date of accrual). U.S. Bank then filed its application for foreclosure on September 20, 2012, which

9

was within the four-year-limitations period.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(b).

Biedryck argues that U.S. Bank's cause of action actually accrued in March, August, or December 2007, because these are the dates that he first defaulted on the note and U.S. Bank first sent him notices regarding acceleration of his loan. U.S. Bank notes that although it had previously accelerated the loan, it abandoned each of its prior accelerations by accepting payments from Biedryck and entering into the loan forbearance and modification agreements with him.

Once a noteholder has accelerated a note, it may abandon its acceleration by agreement or by continuing to accept payments "without exacting any remedies available to it upon declared maturity." *Holy Cross*, 44 S.W.3d at 566–67; *Khan*, 371 S.W.3d at 353.  Abandonment of acceleration restores the contract to its original terms and restores the note's original maturity date.  *Khan*, 371 S.W.3d at 353.

Here, the summary-judgment evidence does show that U.S. Bank, on November 7, 2007, sent Biedryck a Notice of Intent to Accelerate and, on December 21, 2007, it applied for a "Home Equity Foreclosure Order."  However, the summary-judgment evidence further shows, and Biedryck does not dispute, that U.S. Bank later accepted payments from Biedryck from February to April 2008 and did not take further action against him on the declared maturity.

Although the district court, on April 1, 2008, signed U.S. Bank's previously requested order authorizing foreclosure on Biedryck's property, U.S. Bank took no affirmative steps to foreclose. Thus, U.S. Bank abandoned its acceleration. *See Holy Cross*, 44 S.W.3d at 566–67.

Although the summary-judgment evidence does show that U.S. Bank on December 17, 2008 again accelerated the debt and sent Biedryck a Notice of Acceleration, it also shows that U.S. Bank again accepted payments from Biedryck from May to August 2009 and did not take action against him on the declared maturity. *See id.* Indeed, the summary-judgment evidence establishes that on May 20, 2009, "[i]n an attempt to assist [Biedryck] to bring his loan back up to date," U.S. Bank entered into a SFA with Biedryck, revising his payment schedule "in order to catch [him] up on his delinquent payments." Thus, U.S. Bank once again abandoned its acceleration. *See id.* And U.S. Bank, after accepting payments from Biedryck from February through April 2010 and executing a new SFA, then dismissed its 2010 application for foreclosure. As noted above, the four-year statute of limitations on U.S. Bank's power of sale accrued with its 2012 acceleration. *See Khan*, 371 S.W.3d at 353.

Biedryck asserts that "[c]ontrary to the *Holy Cross* standard, U.S. Bank did not continue to idly accept payments between the day when the loan was accelerated in 2007 and when the Order was issued in 2008." And "[r]ather than

11

waiving [the] 10-month payment failure, and agreeing to accept payments that were not made as a basis for rescinding the acceleration, U.S. Bank instead used the payment failure as evidence" to obtain the district court's April 1, 2008 order. *Holy Cross* requires only that a lender accept payments "without exacting any remedies available to it upon declared maturity." 44 S.W.3d at 566–67; *Khan*, 371 S.W.3d at 353.

Biedryck further asserts that U.S. Bank "exact[ed] . . . remedies available to it upon declared maturity" by (1) filing "applications" for orders of foreclosure on August 6, 2007 and December 21, 2007 and (2) obtaining the district court's April 1, 2008 order authorizing foreclosure. U.S. Bank did utilize an expedited procedure to apply for a court order to "allow foreclosure" of a lien containing a power of sale. *See* TEX. R. CIV. P. 736. However, rule 736 merely provides a procedural device to obtain authorization to proceed with the remedy of foreclosure. *See id*. cmt. And the district court's April 1, 2008 order expressly states that U.S. Bank "may" proceed with foreclosure. It is undisputed, however, that U.S. Bank did not proceed. Rather, it executed an SFA with Biedryck, allowing him to restructure his payments.

Biedryck next argues that the limitations period was not "tolled" because the parties did not execute an extension agreement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.036. The four-year limitations period can be suspended by filing a

written agreement in the county clerk's office where the real property is located. *Id.*; *Holy Cross*, 44 S.W.3d at 567. Suspension of the statute of limitations, however, "does not concern the acceleration of a note or the abandonment of that acceleration." *Khan*, 371 S.W.3d at 355–56 (discussing inapplicability of section 16.036 to abandonment of acceleration). Biedryck also argues that the SFAs did not "toll the statutory limitations" period because they were illusory, in that U.S. Bank expressly retained its right to foreclose. However, a formal written agreement is not required to abandon acceleration, and a note holder may abandon acceleration by action alone and without an express agreement. *Holy Cross*, 44 S.W.3d at 566–67; *Khan*, 371 S.W.3d at 356; *Santibanez v. Saxon Mortgage, Inc.*, No. 11-10-00227-CV, 2012 WL 3639814, at *2–3 (Tex. App.—Eastland Aug. 23, 2012, no pet.) (mem. op.) ("parties can abandon acceleration by their actions alone").

Taking as true all evidence favorable to Biedryck and indulging every reasonable inference in his favor, as we must, we conclude that U.S. Bank conclusively established, as a matter of law, that its lien and power of sale had not expired. Accordingly, we hold that the district court did not err in granting U.S. Bank summary judgment.

We overrule Biedryck's first issue.

13

## Constitutionality of Loan Modification

In his second issue, Biedryck argues that the district court erred in granting U.S. Bank summary judgment because the "Loan Modification, and its closing, [are] void as a matter of law." *See* TEX. CONST. art. XVI § 50(a)(6). He also asserts that "issues of material fact concerning the loan modification's validity" preclude summary judgment.

We note that Biedryck, in his petition, did not seek a declaration from the district court on this point. And U.S. Bank did not move for summary judgment on this ground. Rather, in his response to U.S. Bank's summary-judgment motion, Biedryck argued for the first time that the 2009 LMA "is not a valid home equity lien" because it failed to state that it was a security instrument; increased the lien against the property to more than eighty percent of the property value; added fees that could have exceeded the three percent limit; was not preceded by a twelve-day notice; and was signed at his home.

To the extent that Biedryck asserts that the LMA is invalid and therefore cannot support U.S. Bank's abandonment of acceleration, other evidence, as discussed above, establishes such abandonment as a matter of law.

Moreover, the Texas Supreme Court, in *Sims v. Carrington Mortgage Services, L.L.C.*, recently held that "[i]f the restructuring of a home equity loan does not involve a new extension of credit, the requirements of Section 50(a)(6) do

not apply." 440 S.W.3d 10, 15 (Tex. 2014). In *Sims*, the borrowers and their lender entered into a loan modification agreement, which lowered the interest rate and payments, capitalized past-due interest, fees, property taxes, and insurance premiums, and provided that all of the obligations under the original note and security agreement remained unchanged. *Id*. at 12. Subsequently, the borrowers brought a class action suit against the lender, alleging that the loan modification, for them and other similarly situated borrowers, violated Article XVI, section 50 of the Texas Constitution. *Id.* at 13–14. And the United States Court of Appeals for the Fifth Circuit certified the following question, among others, to the Texas Supreme Court:

> After an initial extension of credit, if a home equity lender enters into a new agreement with the borrower that capitalizes past-due interest, fees, property taxes, or insurance premiums into the principal of the loan but neither satisfies nor replaces the original note, is the transaction a modification or a refinance for purposes of Section 50 of Article XVI of the Texas Constitution?

*Id.* at 13. In answering the question, the supreme court explained that

> the restructuring of a home equity loan that . . . involves capitalization of past-due amounts owed under the terms of the initial loan and a lowering of the interest rate and the amount of installment payments, but does not involve the satisfaction or replacement of the original note, an advancement of new funds, or an increase in the obligations created by the original note, is not a new extension of credit that must meet the requirements of Section 50.

*Id.* at 17.

15

Here, like the loan modification agreement in *Sims*, Biedryck's LMA shows that it "amends and supplements" the note and deed of trust dated March 17, 2005, and the "amount payable under the Note and Security Instrument" is $61,404.39, which consists of "unpaid amount(s) loaned . . . plus any interest and other amounts capitalized." The LMA lowered Biedryck's interest rate to five percent and his monthly payments to $308.82. And the LMA notes that the prior obligations under the note and security instrument were still in force. *See id.* at 12. Thus, Biedryck's LMA did not constitute a new extension of credit subject to the requirements of section 50(a)(6). *See id.* at 17.

We overrule Biedryck's second issue.

## Conclusion

We affirm the judgment of the district court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

16