**Paul Piero DI PORTANOVA; Antonella Apuzzo Di Portanova; Max Butler, Robert Hux, and Robert A. Higley, Co–Trustees of the H.R. Cullen and Lillie C. Cullen New Louisiana Trust for the Benefit of Ugo Di Portanova, Appellants,**

v.

**Richard MONROE, Guardian of the Estate of Ugo Di Portanova, An Incapacitated Person, Appellee.**

**No. 01–04–00992–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 3, 2006.

Rehearing Overruled Dec. 7, 2006.

Christopher A. Prine, Crain, Caton & James, P.C., Helen B. Wils, Crain, Caton & James, Wayne Fisher, Fisher, Boyd, Brown, Boudreaux & Huguenard, LLP, Jennifer Bruch Hogan, Richard P. Hogan, Jr., Pillsbury Winthrop Shaw Pittman,

L.L.P., James A. Huguenard, Houston, TX, Darrin M. Walker, Law Offices of Darrin Walker, Kingwood, TX, for Appellants.

Richard Snell, Stacy L. Kelly, David A. Furlow, W. Cameron McCulloch, Thompson & Knight, L.L.P., Houston, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and NUCHIA.

## OPINION

SHERRY RADACK, Chief Justice.

In this appeal, we consider whether a declaratory judgment is appropriate to resolve a dispute between a beneficiary and a trustee over how the trustee should exercise the discretion given to him in the trust instrument. In accordance with our holding that no justiciable controversy was presented to the trial court on that issue, we vacate that portion of the judgment of the trial court and dismiss that portion of the case. We affirm, however, the portion of the trial court's judgment declaring that appellee, Richard Monroe, guardian of the Estate of Ugo Di Portanova, an Incapacitated Person, did not violate *in terrorem* clauses of the wills of H.R. and Lillie Cullen.

## BACKGROUND

### The Parties

Ugo Di Portanova is the 68–year–old grandson of H.R. and Lillie Cullen. Ugo is partially incapacitated and has lived with Annunziata and Umberto LaMatta since 1974. In 1998, Mrs. LaMatta was appointed as guardian of Ugo's person. Richard

Monroe ["the Guardian"] is the guardian of Ugo's estate.[1]

Paul Piero Di Portanova and Antonella Apuzzo Di Portanova ["the Di Portanovas"] are Ugo's half-brother and half-sister. They share the same father—Paolo Di Portanova, but Ugo's mother is Lillie Cullen Di Portanova, the daughter of H.R. and Lillie Cullen, and the Di Portanovas' mother is D'Alesandro Filament, a woman from Naples, Italy.

Max Butler, Robert Hux, and Robert A. Higley ["the Trustees"] are co-trustees of the H.R. Cullen and Lillie C. Cullen New Louisiana Trust, a trust established by the Cullens in their wills for the benefit of their grandson, Ugo.

### The Cullens' Wills and Codicils Create a Discretionary Trust

H.R. and Lillie Cullens' wills each contained a codicil that provided for the creation of certain trusts to hold their Louisiana property, which, at the time, consisted mostly of certain mineral interests. Ugo was the beneficiary of two such trusts— one created under each will. In 1996, the trial court granted a judgment merging the trusts, and the H.R. Cullen and Lillie C. Cullen New Louisiana Trust ("the New Louisiana Trust") was created. After the trusts were merged, all Louisiana properties were sold and there are no assets in the New Louisiana Trust located in the State of Louisiana. The New Louisiana Trust assets consist of cash, assets in accounts at Legg Mason and Merrill Lynch, and an annuity. The current value of the trust is approximately 9.5 million dollars.

The codicils establishing the trusts provide in relevant part:

> During the term of each such Trust, the income of such Trust Estate may be accumulated and retained, in whole or in

1. Jack Trotter was guardian of Ugo's estate at the time this appeal was filed, but has since resigned and Monroe has been substituted as the proper party.

part, *or the Trustee, from time to time, may distribute to the person for whom such Trust was created such amounts of such Trust Estate as, in the discretion of the Trustee, are in the best interests of such person,* taking into account any income such person may have from other sources to the knowledge of the Trustee and any other factors deemed relevant by the Trustee; provided, however, that the income of such portion of the legitime of any person as is held in one of the Louisiana Trusts shall be distributed to, or for the benefit of, such person not less often than once a year. (Emphasis added).

The codicils further provide that upon Ugo's death, "the Trust Estate of such Trust shall be distributed to such person's heirs-at-law under the Louisiana statutes of descent and distribution in effect at that time ..."[2]

### The Guardian Files a Declaratory Judgment Action

On September 20, 2003, the Guardian of Ugo's estate filed an "Application to Make Tax–Motivated Gifts for the Benefit of Annunziata LaMatta and Family," in which he sought to use over five million dollars from the New Louisiana Trust to fund a new trust to be established for the benefit of Annunziata LaMatta and her family. The Guardian also requested that the taxes on the proposed five-million-dollar gift be paid out of the New Louisiana Trust, for a total dispersal by the trust of approximately 6.6 million dollars. If the proposed gift to LaMatta were approved,

approximately 2.9 million dollars would remain in the New Louisiana Trust.

At the same time he filed the above-referenced application, the Guardian also filed this declaratory judgment action. In the Guardian's first amended original petition for declaratory judgment, he requested a judgment declaring that:

the Wills and First Codicils of both H.R. and Lillie C. Cullen permit and/or authorize the distribution of income and corpus from the H.R. Cullen and Lillie C. Cullen New Louisiana Trust for Ugo Di Portanova by the Co–Trustees to Petitioner, for funding purposes, to Annunziata LaMatta or Umberto LaMatta for annual exclusion gifts, to a trust for the LaMatta Family and to pay federal gift taxes due on such gifts.

### The Motions for Summary Judgment and Rulings Thereon

The Trustees filed a motion for Partial Summary Judgment, contending, among other things, that there was no material fact question to be decided in the declaratory judgment action because the trustees had already exercised their discretion and decided not to fund the proposed LaMatta trust.[3]

▮ The Di Portanovas filed two motions for summary judgment. In the first motion, they contended that the Guardian had violated the *in terrorem* clauses of the Cullens' wills by filing his request for de-

---

**2.** We mention this provision only because it explains the Di Portanovas' interest in this suit. As Ugo's only living relatives, the Di Portanovas claim that they would be Ugo's "heirs-at-law."

**3.** On June 8, 2004, counsel for the Trustees sent a letter to counsel for Guardian, which stated in pertinent part:

After carefully considering the referenced Original Petition for Declaratory Judgment the trustees have informed us that they will not, under any circumstances, be making distributions for the purpose of funding a trust for the benefit of Tina LaMatta.

claratory judgment.[4] In the second motion, the Di Portanovas contended that the terms of the trust would not support the dispersal of trust funds to the proposed LaMatta Trust because such dispersal would not be in Ugo's best interest.

The Guardian filed a motion for partial summary judgment, contending that his action in filing the petition for declaratory judgment did not violate the *in terrorem* clauses of the Cullens' wills.

On August 10, 2004, the trial court denied the motions for partial summary judgment filed by the Di Portanovas and the Trustees and granted the motion for partial summary judgment filed by the Guardian.

The Guardian then moved for summary judgment, contending that the terms of the trust would support the dispersal of trust funds to the proposed LaMatta Trust because such a dispersal would be in Ugo's best interest. The Guardian also asked for entry of a final declaratory judgment in his favor.

### The Final Judgment

On November 23, 2004, the trial court signed a Final Declaratory Judgment, in which the trial court declared that the Cullens's wills and codicils authorized the Trustees to make the proposed gifts to the LaMattas, including the payment of the federal gift taxes owing thereon. The final judgment also declared that the Guardian had not violated the *in terrorem* clauses by filing the petition for declaratory judgment, participating in the proceedings, or filing the application to make tax-motivated gifts for the benefit of the LaMatta family.

---

4. An *in terrorem* or "no contest" clause in a will is a clause that provides that a beneficiary who contests the will forfeits his interest

## PROPRIETY OF GRANTING DECLARATORY RELIEF

### On Trustees' Authority to Make Distributions in the Beneficiary's Best Interest

In their first issue on appeal, the Trustees argue that the trial court erred in granting declaratory relief on the issue of whether they were authorized to make the proposed distribution to the LaMattas. Specifically, the Trustees argue that the Guardian's request for a declaratory judgment was "nothing more than an improper request for an advisory opinion." The Guardian responds that controversies concerning the meaning of wills and codicils are appropriately resolved by a declaratory judgment action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997) ("A person interested under a deed, will, written contract or other writings constituting a contract ... may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status, or other legal relations thereunder.").

■■■ We agree that the construction of a trust or will may be the proper subject of a declaratory action. However, a declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (quoting *Bexar-Medina–Atascosa Water Control & Im-*

---

thereunder. *See Ferguson v. Ferguson*, 111 S.W.3d 589, 599 (Tex.App.-Fort Worth 2003, pet. denied).

provement Dist. No. 1 v. Medina Lake Protection Assn., 640 S.W.2d 778, 779–80 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.)) If a justiciable controversy does not exist between the parties, a court must dismiss the case for lack of jurisdiction. Lavely v. Heafner, 976 S.W.2d 896, 897 (Tex.App.-Houston [14th Dist.] 1998, no pet.). "A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." Tex. Health Care Info. Council v. Seton Health Plan, Inc., 94 S.W.3d 841, 846 (Tex.App.-Austin 2002, pet. denied). If the district court lacks the power to effect a remedy that would resolve the dispute at issue, the case does not present a justiciable issue. See State Bar of Texas v. Gomez, 891 S.W.2d 243, 246 (Tex.1994).

■ In this case, the Guardian sought— and the trial court granted—a declaration that

> the Wills and First Codicils of both H.R. and Lillie C. Cullen permit and/or *authorize* the distribution of income and corpus from the H.R. Cullen and Lillie C. Cullen New Louisiana Trust for Ugo Di Portanova by the Co–Trustees to Petitioner, for funding purposes, to Annunziata LaMatta or Umberto LaMatta for annual exclusion gifts, to a trust for the LaMatta Family and to pay federal gift taxes due on such gifts. (Emphasis added).

However, the wills provide that the Trustees may make distributions from the trust estate only if the distribution, *"in the discretion of the Trustee, [is] in the best interests of [the beneficiary]* (emphasis added)." Therefore, the trial court's declaration that the Trustees were *authorized* to fund the proposed LaMatta trust de-

cides the preliminary issue of whether the proposed disbursement to the LaMattas would be in Ugo's best interest. Put another way, the Trustees would not be authorized to make the proposed disbursement to the LaMattas unless it was in Ugo's best interest to do so. The record in the case makes clear that the trial court, in fact, considered and decided that the proposed disbursement was in Ugo's best interest. The parties argued *extensively* and presented evidence to the trial court regarding whether the proposed gift to the LaMattas was in Ugo's best interest. Thus, the trial court's declaration that the trustees were authorized to make the proposed disbursement to the LaMattas resolves in the affirmative the underlying issue of whether the proposed disbursement would serve Ugo's best interest.

■ However, in this discretionary trust, the Trustees, not the court, are given the power to determine the best interest of the beneficiary. Under a discretionary trust, the beneficiary is entitled only to the income or principal that the trustee, in his discretion, shall distribute to the beneficiary. See Kolpack v. Torres, 829 S.W.2d 913, 915 (Tex.App.-Corpus Christi 1992, writ denied) (citing G. Bogert, The Law of Trusts and Trustees § 228 (2d ed.1979)). The beneficiary of a discretionary trust cannot compel the trustee to pay him or to apply for his use any part of the trust property, nor can a creditor of the beneficiary reach any part of the trust property until it is distributed to the beneficiary. Id. A court cannot substitute its discretion for that of a trustee, and can interfere with the exercise of discretionary powers only in cases of fraud, misconduct, or clear abuse of discretion. Beaty v. Bales, 677 S.W.2d 750, 754 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.); Coffee v. William Marsh Rice Univ., 408 S.W.2d 269, 284 (Tex.Civ.App.-Houston 1966, writ ref'd

n.r.e); *see also Brown v. Scherck,* 393 S.W.2d 172, 184 (Tex.Civ.App.-Corpus Christi 1965, no writ) ("It is undoubtedly the general rule that a court will not interfere with trustees in the exercise of a discretionary power except where proper grounds are plead and proved.").

> A court of equity has no right to interfere with and control, in any case, the exercise of a discretionary power, no matter in whom it may be vested; a corporate body or individuals, the aldermen of a city, the directors of a bank, a trustee, executor or guardian; and I add, that meaning and principle of the rule, and the limitations to which it is subject, are in all the cases to which it applies, exactly the same. The meaning and principle of the rule are, that the court will not substitute its own judgment for that of the party in whom the discretion is vested, and thus assume to itself a power which the law had given to another[.]

*City of Houston v. Houston Police Officers Ass'n,* 715 S.W.2d 145, 147 (Tex.App.-Houston [14th Dist.] 1986, no writ) (quoting *Stone v. City of Wylie,* 34 S.W.2d 842, 843–44 (Tex. Comm'n App.1931, judgm't adopted)).

> In the absence of evidence of mala fides, the courts are disinclined to interfere where the trustee has been given discretionary powers.... The court will refuse to review his decision in the absence of a showing that he did not exercise his discretion in good faith or that his decision was unreasonable; for the trustee in such case stands in the position of an arbitrator.

*Nations v. Ulmer,* 122 S.W.2d 700, 703 (Tex.Civ.App.-El Paso 1938, writ dism'd) (quoting 42 Tex. Jur. 96).

In this case, there has been no pleading or proof that the Trustees have acted with mala fides or a lack of good faith. Instead, by seeking a declaratory judgment that the trustees are authorized to fund the proposed LaMatta trust—i.e., that funding the proposed trust is in Ugo's best interest—the Guardian has effectively bypassed the Trustees and prevented them from determining what action, in *their* opinion, is in Ugo's best interest. Similarly, by declaring that the Trustees are authorized to fund the proposed LaMatta trust, the trial court has usurped a power granted exclusively to the trustees under the Cullens' wills; the power to determine when Ugo's best interest would be served by distributions made from the trust estate. *See Aguilar v. Garcia,* 880 S.W.2d 279, 281 (Tex.App.-Houston [14th Dist.] 1994, orig. proceeding) (noting that trial court had no discretion to limit discretionary authority granted solely to trustee by statute).

We have found no Texas case that directly discusses the availability of declaratory relief to a beneficiary seeking to compel a trustee to exercise his discretion in a certain manner. However, we find the following language to be instructive and equally applicable to the present situation:

> The life beneficiaries are given no power by the terms of the will creating the trust to interfere with the trustee in the administration of its trust, and the law gives them no such power. The manner in which a trustee shall exercise his function rests ordinarily within his discretion. If he exceeds his powers, acts negligently, or abuses his discretion, a beneficiary injured thereby may have redress, but a beneficiary has no power to control the action of the trustee.... Thus a controversy between trustee and beneficiary as to the wisdom of a suggested action by the trustee where there is room for choice does not concern 'rights and other relations' of the parties, and forms no basis for a declaratory judgment.

*City Bank Farmers' Trust Co. v. Smith,* 263 N.Y. 292, 295, 189 N.E. 222, 223 (N.Y. 1934); *see also In re Carwithen's Estate,* 327 Pa. 490, 493–94, 194 A. 743, 745–46 (Pa.1937).

We conclude that the ultimate issue decided by the trial court—whether Ugo's best interest would be served by funding the proposed LaMatta trust—did not present a justiciable controversy for the trial court to resolve because the issue should have been left to the Trustees' discretion. *See State Bar of Texas v. Gomez,* 891 S.W.2d 243, 246 (Tex.1994) (holding that declaratory judgment action seeking to compel creation of mandatory pro bono program did not create a justiciable controversy because supreme court, not trial court, had exclusive authority to regulate legal profession).

## On Whether the *In Terrorem* Clauses Have Been Violated

Each of the Cullens' wills contains the following *in terrorem* or "no contest" clause:

> Should any beneficiary hereunder, or anyone duly authorized to act for such beneficiary, institute or direct, or assist in the institution or prosecution of, any action or proceeding of any kind in any court, at any time, *for the purpose of modifying, varying, setting aside or nullifying any provision hereof* relating to my Louisiana estate on any ground whatsoever, all interest of such beneficiary, and the issue of such beneficiary, to my Louisiana estate shall cease, and the interest of such beneficiary, and such beneficiary's issue, in and to my Louisiana estate shall be paid, assigned, transferred, conveyed, and delivered to, or for the benefit of, those person who would take such beneficiary's interest in my Louisiana estate if such beneficiary died intestate, unmarried, and without issue on the date of the institution of the above described action or proceeding. (Emphasis added).

The Guardian moved for summary judgment contending that, as a matter of law, he had not violated the *in terrorem* clauses by filing the present declaratory judgment action or the application to make tax-motivated gifts to the LaMattas. The trial court granted the Guardian's motion, stating in the Final Judgment:

> That the *In Terrorem* Clauses contained in both Paragraph 6.C of the First Codicils of both H.R. Cullen and Lillie C. Cullen have not been violated by Petitioner's filing of the Petition and/or by Petitioner's participation in this proceeding and
>
> That the *In Terrorem* Clauses contained in Paragraph 6.C of the First Codicils of both H.R. Cullen and Lillie C. Cullen have not been violated by Petitioner's filing of the Application to Make Tax–Motivated Gifts for the Benefit of Annunziata LaMatta and Family under Cause Number 094,467 styled In Re: Guardianship of Ugo Di Portanova, a Partially Incapacitated Person.

The Di Portanovas argue that "[t]he proceedings that the Guardian and [Ugo] filed in the Probate Court sought to modify, nullify and vary the purpose and effect of the Louisiana Trust by, as a practical matter, changing the beneficiaries of the trust." Therefore, the issue before the Court is whether the Guardian's request for declaratory relief and application to make tax-motivated gifts to the LaMattas were brought for "the purpose of modifying, varying, setting aside or nullifying any provision [of the Cullins' codicils]," as prohibited by the *in terrorem* clauses.

In determining whether a beneficiary has violated an *in terrorem* clause, we strictly construe the clause. *Conte v. Conte,* 56 S.W.3d 830, 832 (Tex.App.-Hous-

ton [1st Dist.] 2001, no pet.). A breach of such a clause will be found only when the acts of the parties clearly fall within the express terms of the clause. *Ferguson v. Ferguson,* 111 S.W.3d 589, 599 (Tex.App.-Fort Worth 2003, pet. denied); *In re Estate of Hamill,* 866 S.W.2d 339, 342–43 (Tex.App.-Amarillo 1993, no pet.); *Gunter v. Pogue,* 672 S.W.2d 840, 842 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.).

Texas courts have routinely held that actions that do not seek to alter the terms of the will do not violate *in terrorem* clauses. In *Estate of Hamill,* three beneficiaries filed suit opposing the administrator's payment of a certain debt by the estate. 866 S.W.2d at 345. The will contained an *in terrorem* clause and further provided that the administrator was to pay debts and taxes payable at the time of the testatrix's death. *Id.* The court of appeals held that the "action [by the beneficiaries] to determine the validity of the debt assertedly owed by an estate ... would be in pursuance of an obligation under the will to ascertain whether any such debts were properly payable and would not constitute a contest of the will." *Id.; see also Ferguson,* 111 S.W.3d at 599 (holding that beneficiary's complaint against inventory filed by executor did not violate *in terrorem* clause of husband's will); *Conte,* 56 S.W.3d at 832 (holding that action to remove co-trustee did not violate *in terrorem* clause); *Estate of Newbill,* 781 S.W.2d 727, 728 (Tex.App.-Amarillo 1989, no writ) (holding action challenging qualifications of executor did not violate *in terrorem* clause); *In re Estate of Hodges,* 725 S.W.2d 265, 268 (Tex.App.-Amarillo 1986, writ ref'd n.r.e.) (holding that action seeking declaratory judgment that non-beneficiary executor had no standing to contest family settlement agreement was action to construe, rather than contest, will).

In this case, the Guardian sought a declaration that the trustees had the power, or were authorized, to make the proposed gift to the LaMatta's trust from the corpus of the New Louisiana Trust. He did not, as the Di Portanovas argue, seek to change the beneficiary of the New Louisiana Trust, which would at all times be Ugo. The Guardian merely sought a declaration that the trustees were authorized to fund the proposed gift to the LaMattas. While we have already held that this request for declaratory relief did not present a justiciable issue for the trial court because it infringed on the discretion given solely to the trustees, the Guardian's request did not seek to modify, vary, set aside, or nullify the terms of the Cullens' codicils. The codicils authorize the Trustees to disperse the corpus of the trust if, in their discretion, it would be in Ugo's best interest for them to do so. The Guardian's request for declaratory relief, though improperly presented to the trial court, did not seek to alter, but to clarify this authority.

## CONCLUSION

Because the issue of whether the funding of the proposed LaMatta trust should have been left to the discretion of the trustees, not the court, there was no justiciable controversy before the trial court on this issue. If a justiciable controversy does not exist between the parties, a court must dismiss the case for lack of jurisdiction. *Lavely,* 976 S.W.2d at 897. Accordingly, we sustain the Trustees' first issue on appeal. There being no justiciable controversy, we reverse the portion of the judgment of the trial court declaring that the Trustees are authorized to make distributions from the First Louisiana Trust to the LaMattas and render judgment dismissing that portion of the case for want of jurisdiction.

Because the Guardian did not seek to modify, vary, set aside, or nullify the terms of the Cullens' codicils, the trial court's declaration that the *in terrorem* clauses were not violated is not error. Accordingly, we overrule the Di Portanovas' first issue on appeal. We affirm the portion of the judgment declaring that the Guardian did not violate the *in terrorem* clauses.

In light of our dispositions above, we need not address the remaining issues raised by the parties, and decline to do so.